UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
NATALIA KAMINSKY,

**Civ. No.**

      Plaintiff,

  -against-           **COMPLAINT**

                **(JURY TRIAL**
                **DEMANDED)**

THE CITY OF NEW YORK, NYC HEALTH AND
HOSPITALS CORPORATION, CONEY ISLAND
HOSPITAL, JEAN WILINE, AUDREY RUSSELL,
RAISA SEMORILE and PARLIN BHATIA individually,

        Defendants.
------------------------------------------------------------------X

    Plaintiff, Natalia Kaminisky ("Plaintiff" or "Kaminsky"), by and through her

attorneys, L & D LAW P.C, complaining of Defendants, jointly and severally, herein

respectfully shows to this Court and alleges the following:

### NATURE OF THE CASE

1. This action to remedy discrimination based on disability discrimination, nationality

  discrimination, retaliation, hostile work environment and constructive termination,

  which is brought by Plaintiff Natalia Kaminsky pursuant to Defendants' violations.

2. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C.

  §1331 in that the action, involves federal questions, because the causes of action

  asserted herein arise in part under Title VII of the Civil Rights Act of 1964, as amended

  42 U.S.C. 200 Seq. ("Title VII").  This Court has jurisdiction over the related state law

  claims herein asserted pursuant to 28 U.S.C. §1367, *Gibb*, 38 U.S. 715 (1966), and the

  laws of the State of New York, seeking declaratory and injunctive relief and damages

  to redress the injuries Plaintiff suffered as a result of being discriminated against, and

retaliated against by Plaintiff's former employer on the basis of nationality and retaliation in accordance with the applicable principles of pendent jurisdiction.

3.    Plaintiff further complains pursuant to Americans with Disabilities Act ("ADA"), 42 U.S.C 12101 et seq., as amended by the ADA Amendments Act of 2008; the New York State Human Right Law, New York Executive Law 296 et seq. (the Human Rights Law); and the Administrative Code of the City of New York 8-107 et seq. (the "Administrative Code). Supplemental jurisdiction is proper in this Court pursuant to Gibb, 38 U.S. 715 (1966) and 28 U.S.C. § 1367, seeking relief and damages to redress the injuries Plaintiff has suffered as a result of being discriminated against by her employer on the basis of disability discrimination, retaliation and constructive termination inflicted upon Plaintiff by Defendant.

4.    Plaintiff also complains pursuant to the federal Family and Medical Leave Act ("FMLA") for violations regarding the discrimination, retaliation, discouragement and discipline, perpetrated by the Defendants as against the Plaintiff for requesting FMLA leave on account of Plaintiff's diagnosed, recognized, regarded as and/or perceived disability.

## JURISDICTION AND VENUE

5.    Jurisdiction of this Court is proper under 42 U.S.C. § 2000e-5(f)(3), and 28 U.S.C. §§ 1331 and the Civil Rights Act of 1866 and 1871 which give this Court jurisdiction for each statute; the damages; exclusive of interest and costs in this instance exceed that of all lower courts, and this Court's pendent jurisdiction is also invoked.

6.    The unlawful employment practices alleged herein occurred wholly or in part, in the jurisdiction of the Eastern District of New York.

## JURY DEMAND

7.    Plaintiff hereby demands a trial by jury on all issues properly triable thereby.

## PARTIES

8.  Plaintiff, Natalia Kaminsky is an individual 41-year-old woman who resides in the State of New York, County of Kings.

9.  Defendant City of New York, owns, operates and oversees Defendant NYC Health and Hospitals Corporation.

10. Defendant NYC Health and Hospitals Corporation owns, operates and oversees Coney Island Hospital and further operates as a public benefit corporation.

11. Defendant Coney Island Hospital, (hereinafter referred to as Defendant "CIH") is a public hospital established within New York City and a part of NYC Health and Hospitals Corporation, with an address for the purposes of business, which is located at 2601 Ocean Parkway, Brooklyn, NY, 11235.

12. At all times material, Plaintiff was employed as a full-time staff nurse in the emergency room of Coney Island Hospital.

13. At all times material, Jean Wiline (hereinafter referred to as Defendant "Wiline") was and is a supervising employee with Coney Island Hospital.

14. At all times material, Defendant Wiline had direct supervisory authority over Plaintiff Kaminsky regarding her employment which included but was not limited to the ability to hire and fire along with other tangible employment actions.

15. At all times material, Defendant Audrey Russell (hereinafter referred to as Defendant "Russell") was and is a Human Resources representative at Coney Island Hospital.

16. At all times material, Defendant Parlin Bhatia (hereinafter referred to as Defendant "Bhatia") was and is a Human Resources representative with Coney Island Hospital.

17. At all times material, Defendant Raisa Semorile (hereinafter referred to as Defendant "Semorile") was and is an Associate Director of Human Resources with Coney Island Hospital.

18.   At all times material and upon information and belief, Defendants Russell, Bhatia, and Semorile had the ability to hire and fire the Plaintiff, along with other tangible employment actions.

## FACTS

19.    On or about April 7, of 2008, Plaintiff Kaminsky began her employment with Coney Island Hospital as a staff nurse in the Emergency Room at Coney Island Hospital.

20.   Plaintiff Kaminsky is dedicated in her position and has always worked tirelessly to ensure that each patient-related task was completed assiduously and on time.

21.   Throughout her employment with Defendants, Plaintiff has always maintained positive reviews and positive annual evaluations, based on her work performance for over 13 years.

22.   Plaintiff Kaminsky always reported to work, and effectively performed her duties with a spotless record.

23.   In fact, on or about July 16, 2016, Plaintiff received a promotion for the position of Supervisor of Nurses, in the Infection Control Department, further demonstrating her talent and dedication.

24.   In or around the end of February and beginning of March of 2020, as the Coronavirus spread throughout New York City and the United States, Plaintiff was consistently on active duty at Defendants' Coney Island Hospital, attending to her duties as a supervisor.

25.   As Plaintiff and all her coworkers were regarded as essential personnel, they had to be on the front line fighting Covid-19.

26.   Plaintiff Kaminsky was working as the Supervisor of the Nurses in the Infection Control Department at Coney Island and accordingly, she witnessed first-hand, the gravity of the situation, as patients and colleagues were getting sick and many were even dying.

27.     In or around the beginning of March 2020, at the height of the Coronavirus pandemic, Plaintiff Kaminsky started receiving mental health counseling with a private doctor for treatment of an adjustment disorder with mixed anxiety and depression.

28.     As Plaintiff came to see her colleagues' and friends get infected and pass away, Plaintiff's condition got worse.

29.     In fact, fifteen to thirty of Plaintiff's colleagues and friends eventually passed away throughout the pandemic.

30.     In or around August of 2020, Defendant Coney Island Hospital hired Defendant Jean Wiline through an agency and on a temporary basis as a Temporary Supervisor.

31.     At or around this same time, Defendant Wiline became aware that the Plaintiff had complained about the previous Supervisor Cynthia Zipps, a supervisor who got terminated by Defendant Coney Island, who incidentally was also  Defendant Wiline's friend.

32.     Defendant Wiline began to target the Plaintiff and retaliate against the Plaintiff for complaining about her friend Cynthia Zipps. Defendant Wiline would repeatedly verbally assault, threaten, bully, and ultimately discriminate and retaliate against the Plaintiff, by treating her disparately from all the other staff nurses on account of Plaintiff's actual and perceived disability in conjunction with Plaintiff's protected complaints.

33.     On or around September 2020 –Defendant's Supervisor Wiline discriminated against Plaintiff Kaminsky by stating: **"You don't want me to get you fired, you would want to resign yourself"** and **"Everyone says you use your illness to avoid your job, no one wants to work with you."**

34.     Defendant Wiline discriminated against the Plaintiff on the basis of her perceived and/or actual disability.

35.     On or about December 10, 2020, Plaintiff Kaminsky returned to work from an approved 2-day medical leave.

36.     As soon as Plaintiff got back to work from her approved medical leave, Defendant Jean Wiline, in front of Plaintiff's peer Timothy Dubblin, and to the Plaintiff **"Natalia is taking days off for vacation."**

37.     Furthermore, Defendants' Supervisor Wiline retaliated against Plaintiff for taking an approved leave of two days, stating that because Defendants worked more while the Plaintiff was on "**vacation**", Plaintiff needs to do **"double the work"** now that she's back.

38.     The above demonstrates how Defendants' Supervisor Wiline discriminated and retaliated against the Plaintiff for taking a legally and administratively approved medical leave during which the Plaintiff was receiving medical treatment.

39.     On or about January 7, 2021, in a written notice, Plaintiff complained about discrimination to: (i) Dr. Terrence Brady - Chief Medical officer, (ii) NYSNA Union representative Ms. Rehana Lotwan, (iii) Defendant Audrey Russell - Director Labor Relations, (iv) Defendant Raisa Semorile, Associate Director HR of Talent Acquisition and Defendant Jean Wiline, the Temporary Director of the Infection Control Department.

40.     Specifically, Plaintiff stated:

> Jean threatened me by saying **"you don't want to be fired, you want to quit your job when you want"** upon the first time that I ever saw her....
> She also called me in her office because I took a sick day for the first time during her time. For the second time I called in sick and provided her with a doctor's note she belittled me saying **I took off too many days and that from that day on I would have to do all the reports myself because Tim was doing them during a time that she stated as my "time off" rather than my sick time. Jean penalized me for being sick during a pandemic situation in which the state law covers that I cannot come to work sick**....

It is evident that this situation has become personal as Jean is not concerned with anybody else's break times sick times or just time off, which they are constantly taking and not notifying in advance. I have always called in advance to let the department and director know whether I am taking time off. People in the department previously and still taking time off without being sick **yet I am the only one who is being discriminated against**, otherwise everyone in the department would be involved within this HR meeting regarding their time off and their breaks, and job descriptions.

41. Plaintiff practically complained to all her supervisors regarding Defendant Wiline's discriminatory, retaliatory and hostile behavior.

42. In or around late April of 2021, Plaintiff Kaminsky, who has been the supervising nurse in the Infection Control Department during the Covid pandemic, started experiencing Covid-like symptoms and went to a doctor for testing and treatment.

43. Based on New York City government regulations at the time, Plaintiff Kaminsky was not permitted to appear or perform at work until she received clearance from a medical professional.

44. On or about April 26, 2021, Plaintiff Kaminsky was cleared to return to work with all of the requisite paperwork necessary to return to her duties, but not before it was approved by a supervisor.

45. When Plaintiff asked Defendant's Supervisor Wiline to sign said requisite paperwork, Wiline outright refused to sign the paperwork, demonstrating Defendant Wiline's attempt to subject the Plaintiff to an adverse employment action.

46. Specifically, Defendant's Supervisor Wiline stated that she **"Doesn't know why Plaintiff was absent"**, and that she **"Did not believe that Plaintiff was sick"** and instead insisted that Plaintiff was just **"taking days off,"** thus refusing to sign Plaintiffs' paperwork and refusing to let Plaintiff work.

47. Having no other choice, The Plaintiff informed the Occupational Health and Safety (hereinafter "OHS") Defendant Parline Bahtia who also explained the process to

Defendant's Supervisor Wiline. However, Defendant Wiline still refused to sign the document, discriminating and retaliating against the Plaintiff on the basis of her disability.

48. Due to Defendant's Supervisor Wiline's refusal to sign the clearance paperwork, Plaintiff Kaminsky was forced to leave the workplace by Defendant HR Representative Bhatia, in order to comply with protocol.

49. Ultimately, a different supervisor, Chief Medical Officer Dr. Brady finally signed the paperwork and Plaintiff Kaminsky was permitted to return to work.

50. Upon Plaintiff's return, Defendant's Supervisor Wiline and HR Representative Bhatia called for a meeting with Defendants' HR Supervisor Raisa Semorile and Chief Medical Officer Dr. Brady in order **"to discuss the veracity"** of Plaintiff's illness, propagated by Defendant's Supervisor Jean Wiline, who consistently discriminated against the Plaintiff on the basis of perceived or actual disability.

51. During this meeting, Defendant Bhatia called Plaintiff Kaminsky twice on the phone addressing the Plaintiff aggressively and asking invasive personal questions regarding Plaintiff's medical leave.

52. Defendant's HR Representative Bhatia went even further in her invasive interrogatory and "googled" Plaintiff Kaminsky's private medical doctor, which showed that he was officially titled as a pediatrician.

53. Most importantly, Bhatia personally called Plaintiff's private medical doctor and directly asked him questions regarding Plaintiff Kaminsky's medical diagnosis and her clearance to return to work which was clearly an overt violation of HIPPA regulations.

54. Defendants' HR Supervisor Bhatia and Supervisor Wiline, ruthlessly interrogated the Plaintiff, insisting on being handed information which is protected by Patient-Doctor confidentiality laws.

55.   Defendants' Supervisor Wiline further questioned the validity of the credentials of Plaintiff's doctor, stating that the doctor was just a "pediatrician," berating the Plaintiff with unnecessary accusations and personal questions which were way beyond the scope of Plaintiff's professional duties; or Defendants' staff rights of supervision over any given employee.

56.   On or about April 27, 2021, the very next day after Plaintiff's meeting with Defendant's Supervisor Wiline and HR Representative Bhatia, Defendant Wiline continued her discriminatory and retaliatory behavior towards Plaintiff Kaminsky.

57.   Specifically, Defendant's Supervisor Wiline informed Plaintiff that because Plaintiff had taken sick days, and the remaining staff had to do her work during her absence Plaintiff now had to do extra work including all of Wiline's personal assignments because it was Defendant's Supervisor Wiline time to go on vacation.

58.   Plaintiff again reiterated to Wiline that she had a doctor's approved leave and that she didn't go on vacation.

59.   Since Plaintiff is diagnosed with adjustment disorder with mixed anxiety and depression and was being treated for this disability at the time, this retaliatory action taken by Defendant's Supervisor Wiline would further aggravate exacerbate and re-activate her condition; leaving Plaintiff in a perpetual state of restlessness and depression.

60.   Plaintiff Kaminsky reached out to Defendant Wiline, pleading with her to evenly distribute the work so as to not overburden the Plaintiff with the assignments of everyone else.

61.   Defendants' Supervisor Wiline discriminated and retaliated against the Plaintiff by promptly denying Plaintiff's request to be given an equal amount of duties which were similar to Plaintiff's peers.

62.   The above demonstrates Defendants' blatant disparate treatment and discriminatory behavior against the Plaintiff based on her disability.

63.   Due to the continuous harassment and discriminatory behavior by Defendant Wiline, Plaintiff Kaminsky suffered severe emotional distress resulting from an extremely hostile work environment, directly caused by Defendant Wiline.

64.   The ongoing discriminatory situation with Defendant's Supervisor Wiline forced the Plaintiff to seek further medical treatment and the necessary medical leave to take care of her health.

65.   On or about May 10, 2021, Defendants hired a new director, Dr. Saungi Mccalla.

66.   On or about May 17, 2021, Plaintiff Kaminsky informed Dr. Mccalla that the Plaintiff would need to take medical leave to tend to her health, at the recommendation of her doctor.

67.   Upon being notified that Plaintiff Kaminsky intended to take a necessary sick leave to tend to her mental health, Defendant's Supervisor Wiline immediately began to harass, bully, verbally abuse and ultimately discriminate against the Plaintiff for her health condition and request to take leave as an accommodation.

68.   Specifically, Defendant Wiline directly threatened Plaintiff stating, **"I will not leave it alone, I will hold you accountable"**, referring to Plaintiff's requested sick leave.

69.   Defendants attempted to hinder the Plaintiff from getting her FMLA approved leave without any given reason.

70.   Defendant Wiline discriminated against Plaintiff by falsely and maliciously claiming that Plaintiff's approved medical leave was invalid, without any given proof or reason.

71.   Defendant Wiline attempted to diminish the Plaintiff and her disability, further exacerbating Plaintiff's depression and anxiety.

72.   Plaintiff nonetheless started her FMLA leave as it would get retroactively approved

regardless of the claims of invalidity set forth by Defendant's Supervisor Wiline, demonstrating once more the ill intent and retaliation of Wiline against Plaintiff.

73.  Plaintiff Kaminsky's medical leave commenced May 18, 2021 and was scheduled until June 4, 2021.

74.  The very next day, on or about May 19, 2021, the Plaintiff received a letter from HR Defendant Audrey Russel instructing the Plaintiff to appear for a Step A1 Disciplinary hearing regarding Plaintiff's medical leave with added disciplinary charges for her absence dated for May 20, 2021.

75.  Plaintiff had just come off of FMLA and Defendants were already retaliating against her.

76.  In fact, during Plaintiff's leave to attend to her health, Defendants demanded on a continuous basis to schedule disciplinary meetings under clear insistence and incitement of Defendant's Supervisor Wiline, causing further damage to the mental health and well-being of the Plaintiff.

77.  On or about May 25, 2021, Defendant Audrey Russel sent out a second notification of charges to the Plaintiff, however these were modified with additional extra charges.

78.  The second statement contained only two pages and even though it was a new statement of charges, the charges were cut in half from the original document, but they were still dated May 19, 2021 confusing the Plaintiff and further obfuscating which statements Defendants wanted her to answer.

79.  Defendants' HR Director Audrey Russell and others, knowing fully well that Plaintiff could not attend these meetings, scheduled these hearings during the time that Plaintiff Kaminsky was scheduled to be on medical leave; demonstrating the arbitrary and capricious process which was an attempt to subject the Plaintiff to adverse employment actions.

80.     On or about May 26, 2021, Plaintiff provided the defendants with a Doctor's note from

        Dr. Michael Lindner stating:

> "Plaintiff's condition exacerbated on 3/17/21, and is
> continuous….As such…she will currently need more than 3
> consecutive full-days absence from work. She is receiving
> treatment for this condition **2-3 times per week** to alleviate the
> current exacerbation, and it is my estimate that she will need this
> care for 2-3 weeks."

81.     Soon thereafter, Plaintiff's FMLA leave was extended to June 14, 2021.

82.     Throughout the entirety of Plaintiff's FMLA leave, Defendants discriminated against

        the Plaintiff and retaliated against her for taking a protected leave.

83.     Plaintiff hired an attorney to represent her on these administrative proceedings,

        however the Step IA Hearing kept being rescheduled.

84.     On or about June 14, 2021, Plaintiff came back to work.

85.     As soon as Plaintiff came back to work, Defendant Wiline retaliated against the Plaintiff

        by overloading her with assignments.

86.     It was clear to Plaintiff that it would be impossible to comply with Defendant Wiline's

        assignments.

87.     On or about June 17, 2021, Plaintiff wrote an email Defendants Supervisor Dr. McCalla

        demanding clarification along with the fair and equal distribution of the assignments.

88.     Due to Plaintiff's severe condition, Plaintiff was working on intermittent basis, roughly

        two days a week until September 14, 2021.

89.     In or around October of 2021, Dr. Mccalla, Plaintiff's new direct supervisor was

        terminated.

90.     As Defendant Wiline became Plaintiff's direct Supervisor again, the Plaintiff became

        concerned about the discriminatory animus Defendant Wiline would subject the

        Plaintiff to at work.

91.     In addition, Defendant Wiline's charges against the Plaintiff were still in effect and were

not dismissed.

92.     Plaintiff feared that Defendant Wiline's false allegations would cause for the Plaintiff to get in even more trouble.

93.     Upon information and belief, in or around October 2021, Plaintiff's co-worker who had just came back from FMLA leave, also filed a complaint against Defendant Wiline and her friend Simone Almeida regarding similar issues to those of Plaintiff.

94.     This caused for the Plaintiff to be even more concerned about her safety.

95.     On or about December 1, 2021, during Plaintiff's last departmental meeting Defendant Wiline discriminated against the Plaintiff while in front of another co-worker who is also Defendant Wiline's friend, by stating that the Plaintiff **cannot speak English as the Plaintiff is a foreigner.**

96.     The above illustrates how Defendant Wiline's comment was not simply a stray remark, but rather, demonstrates at least in part, the discriminatory animus held against the Plaintiff.

97.     For the Plaintiff, this was the last straw. Defendants never addressed, remedied or prevented the discriminatory and retaliatory behavior. Instead, Defendants left the Plaintiff in an extreme hostile environment and tried to force Plaintiff from her job. At this point, Plaintiff decided to look for alternate employment in an effort to remove herself from the unlawful environment.

98.     On or about December 1, 2021, seeing no remedy to the situation Defendants placed the Plaintiff in, the Plaintiff emailed Defendants' Director, Dr. Brady.

99.     Shortly thereafter, the Plaintiff emailed Defendant Raisa Semorile.

100.    Specifically, Plaintiff's letter stated the following:

> With all my respect to you and to Coney Island Hospital, I would like to inform you that I will be leaving Coney Island Hospital from my Infection Prevention position as of December 13, 2021, my last day at work will be Friday, December 10, 2021. A hostile situation was created

in the department under Wiline Jean's administration. **I felt discriminated against by her on behalf of my disability**, and it was difficult for me to collaborate with her when Wiline wrongfully filed a complaint against me to HR full of false accusations. Because of all her actions against me I had to extend my FMLA, which impacted my health and finances. The most recent incident was yesterday 12/1/2021 when Wiline Jean accused me of not understanding the English language and stated the following: **"You are using a language you do not understand".** To me this seems a very inappropriate and hostile statement, especially since it was in front of my colleagues and meant to put me down. Wiline is fully aware that English is my second language. I feel that I am not able to continue working in this kind of hostile environment. Please accept my resignation request, If you have any questions, feel free to contact me. I appreciate your understanding and it was always a pleasure to work with you

101.  Defendant Wiline clearly discriminated against the Plaintiff on the basis of her nationality, further exacerbating Plaintiff's disability.

102.  On or about December 9, 2021, to make matters worse, after Defendant Wiline was made aware of Plaintiff's constructive termination, Defendant Wiline organized the Plaintiff a goodbye party and mocked the Plaintiff through email, asking whether she would be able to attend it.

103.  The Plaintiff refused to attend the party and specifically told Defendant Wiline not to do it.

104.  Defendant Wiline still did the party without the Plaintiff, celebrating Plaintiff's forced cessation from employment with the Defendants.

105.  Plaintiff, a single mother of two children, was forced by the Defendants to leave her job of fourteen years.

106.  Sometime thereafter, the Plaintiff finally started a new job.

107.  However, the Plaintiff lost seniority of fourteen years, eleven of which, were years with a spotless record, prior to Defendant Wiline's arrival.

108.  Plaintiff lived five minutes away from Defendant Coney Island Hospital. However, Plaintiff's new job is over an hour away causing for the Plaintiff to have less time with

her children.

109. Defendants further forced the Plaintiff to lose her City Pension plan, which she had a loan for.

110. Defendants forced the Plaintiff to lose her union benefits.

111. Defendants forced the Plaintiff to pay large medical expenses due to the severity and frequency of her doctor visits, all of which were exacerbated, aggravated and re-activated by Defendant Wiline's unlawful and malicious behavior.

112. Defendants unlawfully discouraged the Plaintiff from taking FMLA leave and used this as a factor against the Plaintiff to take disciplinary adverse actions against her.

113. Lastly, Plaintiff had to pay large medical expenses due to the severity and frequency of her doctor visits, all of which were exacerbated by Defendant Wiline.

114. Defendants subjected the Plaintiff to disparate treatment on account of her disability and in violation of the federal, state and city law.

115. As a result of Defendant's actions, Plaintiff Kaminsky felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

116. As a result of Defendant's discriminatory and intolerable treatment, Plaintiff Kaminsky suffered and continues to suffer severe emotional distress.

117. As a result of the acts and conduct complained of herein, Plaintiff Kaminsky has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails.

118. Plaintiff Kaminsky has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

119. Plaintiff Kaminsky further suffers from panic attacks and cannot sleep at night on account of Defendants' discriminatory and retaliatory conduct.

120. Defendants' unlawful behavior took a toll on Plaintiff's mental health, resulting in

physical manifestations which exacerbated, re-activated and aggravated the Plaintiff's disability.

121.   Since February of 2020 up until the present time, Plaintiff has been treating with a psychologist.

122.   The above are just some of the examples of unlawful and discriminatory conduct to which Defendant subjected Plaintiff Kaminsky.

123.   Plaintiff Kaminsky suffered and will continue to suffer as a direct result of Defendants' discrimination, retaliation and severe and pervasive hostile work environment.

124.   Defendants' actions and conduct were intentional and intended to harm Plaintiff.

125.   As a result of the above, Plaintiff has been damaged in an amount which exceeds the jurisdiction of all lower courts.

126.   As Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law. As such, the Plaintiff demands Punitive Damages as against all the Defendants, jointly and severally.

### AS A FIRST CAUSE OF ACTION FOR
### DISCRIMINATION UNDER THE
### NEW YORK CITY ADMINISTRATIVE CODE
### (Not Against Individual Defendants)

127.   Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

128.   The Administrative Code of City of NY § 8-107 [1] provides that "It shall be an unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

129. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(l)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against the Plaintiff as set forth herein.

## AS A SECOND CAUSE OF ACTION FOR
## DISCRIMINATION UNDER THE
## NEW YORK CITY ADMINISTRATIVE CODE
## (Not Against Individual Defendants)

130. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

131. The New York City Administrative Code Title 8, §8-107(l)(e) provides that it shall be unlawful discriminatory practice: "For an employer... to discharge ... or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter..."

132. Each of the Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(l)(e) by discriminating against the Plaintiff because of Plaintiffs opposition to the unlawful employment practices of Plaintiffs employer.

## AS A THIRD CAUSE OF ACTION FOR
## DISCRIMINATION UNDER THE
## NEW YORK CITY ADMINISTRATIVE CODE
## (As Against Individual Defendants)

133. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

134. New York City Administrative Code Title 8-107(19) Interference with protected rights. It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or

encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section.

135.     Defendants violated the section cited herein as set forth.

**AS A FOURTH CAUSE OF ACTION FOR
DISCRIMINATION UNDER THE
NEW YORK CITY ADMINISTRATIVE CODE
<u>(As Against Individual Defendants)</u>**

136.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

137.     The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

138.     Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

**AS A FIFTH CAUSE OF ACTION FOR
DISCRIMINATION UNDER THE
NEW YORK CITY ADMINISTRATIVE CODE
<u>(Not Against Individual Defendants)</u>**

139.     Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

140.     New York City Administrative Code Title 8-107(13) Employer liability for discriminatory conduct by employee, agent or independent contractor.

> a.   An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

> b.   An employer shall be liable for an unlawful discriminatory practice

based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

(1) the employee or agent exercised managerial or supervisory responsibility; or

(2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

(3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

141.    Defendants violated the section cited herein as set forth.

## AS A SIXTH CAUSE OF ACTION FOR
## DISCRIMINATION UNDER STATE LAW
### (Not Against Individual Defendants)

142.    Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice:

"(a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

143.    Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff as set forth herein.

144.    Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

## AS A SEVENTH CAUSE OF ACTION FOR
## DISCRIMINATION UNDER STATE LAW
## <u>(As Against Individual Defendants)</u>

145.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

146.   New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice:

>   "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

147.   Defendants engaged in an unlawful discriminatory practice by discharging, retaliating, and otherwise discriminating against the Plaintiff because of Plaintiff s opposition to the unlawful employment practices of Plaintiff s employer.

## AS AN EIGHTH CAUSE OF ACTION FOR
## DISCRIMINATION UNDER STATE LAW
## <u>(As Against Individual Defendants)</u>

148.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

149.   New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory practice:

>   "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

150.   Defendants engaged in an unlawful discriminatory practice in violation of New York State Executive Law §296(6) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

**AS A NINTH CAUSE OF ACTION FOR**
**DISCRIMINATION UNDER**
**THE AMERICANS WITH DISABILITIES ACT**
**(not against individual Defendants)**

151. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

152. Plaintiff claims Defendants violated Title I of the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (ADA), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

153. SEC. 12112. [Section 102] specifically states "(a) General Rule. - No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

154. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A TENTH CAUSE OF ACTION FOR**
**RETALIATION UNDER**
**THE AMERICANS WITH DISABILITIES ACT**
**(not against individual Defendants)**

155. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

156. SEC. 12203. [Section 503] states, "(a) Retaliation. - No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

**AS AN ELEVENTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER TITLE VII**
**(Not Against Individual Defendants)**

157.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs

of this complaint.

158.    Title VII states in relevant part as follows:

    a.  Employer practices:

    b.  It    shall    be    an    unlawful    employment    practice    for    an    employer:

    i.  to fail or refuse to hire or to discharge any individual, or otherwise to discriminate
against any individual with respect to his compensation, terms, conditions, or
privileges of employment, because of such individual's race, color, religion, sex, or
national origin;

159.    This claim is authorized and instituted pursuant to the provisions of Title VII of the
Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e seq., as amended, for relief based
upon the unlawful employment practices of the above-named Defendants. Plaintiff
complains of Defendants' violation of Title VII's prohibition against discrimination in
employment based, in whole or in part, upon an employee's race and gender.

160.    Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. 2000e
et seq., by terminating and otherwise discriminating against Plaintiff as set forth herein
on account of Plaintiff's race and gender.

**AS A TWELFTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER TITLE VII**
**(Not Against Individual Defendants)**

161.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs

of this complaint.

162.    Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e-3(a) provides

that it shall be unlawful employment practice for an employer:

    c.  "(1) to . . . discriminate against any of his employees . . . because he has opposed
any practice made an unlawful employment practice by this subchapter, or because
he has made a charge, testified, assisted or participated in any manner in an
investigation, proceeding, or hearing under this subchapter."

163.    Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. 2000e

seq. by discriminating against Plaintiff with respect to the terms, conditions or

privileges of employment because of his opposition to the unlawful employment

practices of Defendants.

164.    Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A THIRTEENTH CAUSE OF ACTION
## UNDER § 825.220 OF THE FAMILY AND
## MEDICAL LEAVE ACT ("FMLA")
## (Not Against Individual Defendants)

165.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs

of this complaint.

166.    In relevant part, the Act states as follows:

**(a)** The FMLA prohibits interference with an employee's rights under the law, and with legal proceedings or inquiries relating to an employee's rights. More specifically, the law contains the following employee protections:

**(1)** An employer is prohibited from interfering with, restraining, or denying the exercise of (or attempts to exercise) any rights provided by the Act.

**(2)** An employer is prohibited from discharging or in any other way discriminating against any  person (whether or not an employee) for opposing or complaining about any unlawful practice under the Act.

**(3)** All persons (whether or not employers) are prohibited from discharging or in any other way discriminating against any  person(whether or not an employee) because that person has -

**(i)** Filed any charge, or has instituted (or caused to be instituted) any proceeding under or related to this Act;

**(ii)** Given, or is about to give, any information in connection with an inquiry or proceeding relating to a right under this Act;

**(iii)** Testified, or is about to testify, in any inquiry or proceeding relating to a right under this Act.

**(b)** Any violations of the Act or of these regulations constitute interfering with, restraining, or denying the exercise of rights provided by the Act. An employer may be liable for compensation and benefits lost by reason of the violation, for other actual monetary losses sustained as a direct result of the violation, and for appropriate equitable or other relief, including employment, reinstatement, promotion, or any other relief tailored to the harm suffered. *See* § 825.400(c). Interfering with the exercise of an employee's rights would include, for example, not only refusing to authorize FMLA leave, but discouraging an  employee from using such leave.

(c) The Act's prohibition against interference prohibits an employer from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights. For example, if an employee on leave without pay would otherwise be entitled to full benefits (other than health benefits), the same benefits would be required to be provided to an employee on unpaid FMLA leave. By the same token, employers cannot use the taking of FMLA leave as a negative factor in employment actions, such

as hiring, promotions or disciplinary actions; nor can FMLA leave be counted under no fault attendance policies. *See* § 825.215.

167.   Defendants participated in unlawful interference with Plaintiffs protected rights under the FMLA, violated the law, and caused damage to the Plaintiff.

168.   Defendants took disciplinary actions against the Plaintiff both during and after her FMLA leave, causing further damage to the Plaintiff.

**WHEREFORE**, Plaintiff demands the following relief jointly and severally against all Defendants:

(a) a declaration that Defendants violated Plaintiff's federal and state civil rights;

(d) compensatory damages for the injuries suffered by Plaintiff by reason of Defendants' unlawful and unjustified conduct, in an amount just and reasonable and in conformity with the evidence at trial in an amount to be determined at trial;

(c) punitive damages against the individual Defendants assessed to deter such intentional and reckless deviations from well-settled constitutional standards, to the extent allowable by law;

(d) damages for emotional distress, lost wages, back pay, front pay, statutory damages, medical expenses, interest;

(d) reasonable attorneys' fees and costs pursuant to federal law and all other applicable laws; and

(e) such other and further relief as appears just and proper.

Dated: New York
March 16, 2022

**L& D Law, P.C.**
Liggieri & Dunisha

_____/s/_____
Paul Liggieri, Esq.
*Attorneys for Plaintiff*
11 Broadway, Suite 615
New York, NY 10004
(212) 374-9786